IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Case No. CR-23-515-PRW |
| ) | |
| JAMES WILLINGTON STARR, ) | |
| ) | |
| Defendant. ) | |

# ORDER

Before the Court is Defendant's Motion to Suppress (Dkt. 21) and the United States's Response (Dkt. 22). The Court heard evidence and arguments on the matter at a hearing on April 2, 2024. For the reasons that follow, the Motion (Dkt. 21) is **DENIED**.

## *Background*

The facts of this case are essentially undisputed. On November 2, 2023, Oklahoma City Police Department ("OCPD") Officers responded to a domestic call in the area of SW 57th Street, Oklahoma City. When officers arrived, the caller described an altercation between herself and her boyfriend, Defendant James Willington Starr. The caller stated that Mr. Starr had left the residence, possibly with a firearm, and she provided a physical description of Mr. Starr. At some point,[1] the caller also described a black backpack that Mr. Starr had been carrying.

---

[1] Officer Garrison could not recall exactly when officers received a description of the backpack, only that it was some time after the initial contact with the caller.

1

Officers began a search of the area, and eventually located Mr. Starr lying on the bottom shelf of a wooden shop table on the side of a nearby house. Mr. Starr was arrested, searched, and placed in the back of a patrol vehicle. Officers then investigated the table where Mr. Starr had been lying and found tucked underneath the bottom shelf a loaded .38 caliber revolver and a black backpack. Officer Gutierrez bagged the revolver as potential evidence, then brought the backpack to the hood of a patrol car and began removing and bagging the contents, performing what he believed was a search incident to arrest. The contents of the backpack included narcotics, as well as items potentially indicative of distribution activities—e.g., a small scale, cash and coins, and empty plastic baggies.

Mr. Starr was transported to the Oklahoma County Jail for booking. The revolver and the contents of the backpack were inventoried and stored as evidence. Under OCPD and Oklahoma County Detention Center policy, such inventories of inmate property occur both when those belongings are tagged as potential evidence, and when they are simply stored for safekeeping to be returned to the inmate upon discharge.

On December 19, 2023, Mr. Starr was charged by Indictment (Dkt. 1) with three counts: (1) felon in possession of a firearm, in violation of 18 U.S.C. § 922(g)(1); (2) possession of fentanyl with intent to distribute, in violation of 21 U.S.C. § 841(a)(1); and (3) possession of a firearm in furtherance of a drug-trafficking crime, in violation of 18 U.S.C. § 924(c)(1)(A). On February 20, 2024, Mr. Starr filed the present Motion (Dkt. 21). Mr. Starr does not contest the seizure of the firearm, only the warrantless search of the backpack. The United States concedes that the search did not constitute a proper search

incident to arrest.[2] Instead, the government offers two alternative warrantless search exceptions: abandonment and inevitable discovery.

### *Legal Standard*

"The Fourth Amendment's prohibition of 'unreasonable searches and seizures' means that police generally cannot conduct a search or make a seizure absent a warrant."[3] This general rule is subject to several exceptions that permit warrantless searches in particular circumstances.[4] The two exceptions relevant here are abandonment and inevitable discovery.

"The Fourth Amendment does not prohibit a search of property that has been 'abandoned.'"[5] "Abandonment occurs if either (1) the owner subjectively intended to relinquish ownership of the property or (2) the owner lacks an objectively reasonable expectation of privacy in the property."[6] The Court must consider "words spoken, actions taken, and other objective facts involved."[7]

---

[2] *See United States v. Knapp*, 917 F.3d 1161, 1166 (10th Cir. 2019) (holding that search was not incident to arrest as the searched backpack was not "of one's person" and was not within defendant's immediate reach and control).

[3] *United States v. Kendall*, 14 F.4th 1116, 1122 (10th Cir. 2021) (quoting U.S. Const. amend. IV).

[4] *See United States v. Braxton*, 61 F.4th 830, 833 (10th Cir. 2023).

[5] *United States v. Juszczyk*, 844 F.3d 1213, 1213 (10th Cir. 2017).

[6] *United States v. Easley*, 911 F.3d 1074, 1083 (10th Cir. 2018).

[7] *United States v. Morgan*, 936 F.2d 1561, 1571 (10th Cir. 1991).

"Illegally obtained evidence may be admitted if it 'ultimately or inevitably would have been discovered by lawful means.'"[8] Those lawful means include inventory searches.[9] Such searches must be conducted according to standardized procedures, and the government bears the burden to show that "[t]he policy or practice governing inventory searches [is] designed to produce an inventory," not as a "ruse for a general rummaging in order to discover incriminating evidence."[10]

### *Analysis*

One small matter before turning to abandonment and inevitable discovery. The United States argues that Mr. Starr bears an initial burden to show that "his own rights were violated by the challenged search"[11]—i.e., that he held a "legitimate possessory interest"[12] in the backpack. Without such a showing, the government says, Mr. Starr lacks standing to contest the search.

"The concept of standing in Fourth Amendment cases can be a useful shorthand for capturing the idea that a person must have a cognizable Fourth Amendment interest in the place searched before seeking relief for an unconstitutional search; but it should not be

---

[8] *United States v. Christy*, 739 F.3d 534, 540 (10th Cir. 2014) (quoting *Nix v. Williams*, 467 U.S. 431, 444 (1984)).

[9] *See United States v. O'Neil*, 62 F.4th 1281, 1290–91 (10th Cir. 2023).

[10] *Florida v. Wells*, 495 U.S. 1, 4 (1990).

[11] *United States v. Eckhart*, 569 F.3d 1263, 1274 (10th Cir. 2009).

[12] *United States v. Valdez Hocker*, 333 F.3d 1206, 1208–09 (10th Cir. 2003) (quoting *United States v. Allen*, 235 F.3d 482, 489 (10th Cir. 2000)).

4

confused with Article III standing[.]"[13] Fourth Amendment standing is "not distinct from the merits and 'is more properly subsumed under substantive Fourth Amendment doctrine.'"[14] Where abandonment is at issue, courts routinely merge the issues of abandonment and Fourth Amendment "standing."[15] Indeed it would be hard not to, as both address the same substantive question: did the defendant have a reasonable expectation of privacy in the place searched? The Court thus does not treat Fourth Amendment standing as a discrete, threshold matter, but rather as a question that will be resolved by the answer to the abandonment question.[16]

**I. Abandonment**

The Court finds that Mr. Starr abandoned any reasonable expectation of privacy he had in the backpack. Mr. Starr tucked the bag in the small space under the shop table. Officer Gutierrez testified that one of the backpack's straps was just visible when standing next to the table, but that it was otherwise hidden.[17] Mr. Starr did not ask officers to collect the bag as he was arrested.[18] Indeed, when asked if the bag was his, he disclaimed

---

[13] *Byrd v. United States*, 584 U.S. 395, 410–11 (2018).

[14] *Id.* at 410 (quoting *Rakas v. Illinois*, 439 U.S. 128, 139 (1978)).

[15] *See United States v. Ross*, 963 F.3d 1056, 1063–65 (11th Cir. 2020) (collecting cases).

[16] There are circumstances where courts treat the burden on a defendant to demonstrate Fourth Amendment standing as a more discrete issue. Almost exclusively, they arise where there is a known ownership dispute over a vehicle or premises that was subject to a challenged search. *See, e.g.*, *Eckhart*, 569 F.3d at 1275; *Valdez Hocker*, 333 F.3d at 1209.

[17] On the bodycam footage, provided as Hearing Exhibit 3, it is difficult to make out any portion of the bag until the officer manages to pull it into the open.

[18] By contrast, Mr. Starr repeatedly inquired after the phone that was in his hand when he was discovered.

ownership. Nor was anyone else present at the scene who could have taken custody of the backpack on Mr. Starr's behalf. By his words and actions, Mr. Starr demonstrated a subjective intent to relinquish his control over, and privacy interest in, the backpack.

As for any objective expectation of privacy, Agent Callie McLaughlin testified that she reached out to both the owner and the resident of the house alongside which Mr. Starr was discovered. Neither of them recognized or had knowledge of Mr. Starr. Numerous cases, typically in the context of police pursuit, have recognized the commonsense proposition that leaving property on a stranger's land or in a public space generally constitutes abandonment.[19]

Mr. Starr argues that this case is more like *Smith v. Ohio*[20] than a pursuit case. There, the defendant was standing by his car in a parking lot holding a bag.[21] When police approached, the defendant tossed the bag onto the hood of his car and moved to stand between the car and the officers.[22] In dicta, the Court rejected out of hand the contention that those actions constituted abandonment.[23]

This Court fails to see the likeness. Unlike Smith, Mr. Starr was not intercepting police "to protect his private property from inspection."[24] And while he may not have been

---

[19] *See Juszczyk*, 844 F.3d at 1214–15; *Morgan*, 936 F.2d at 1569–71; *Jones*, 707 F.2d at 1172–73.

[20] 494 U.S. 541 (1990).

[21] *Id.*

[22] *Id.*

[23] *Id.*

[24] *Id.* at 543.

6

fleeing an active pursuit when he stashed the backpack on the side of a stranger's house, Mr. Starr was about to be transported from the area to the county jail. Nevertheless, he made no effort to ask officers to recover the bag from its hiding place. It may be that Mr. Starr hoped that the bag would go undiscovered, and that he could retrieve it upon his release. But "his ability to recover the [backpack] depended entirely upon fate and the absence of inquisitive (and acquisitive) passers-by."[25] Accordingly, he relinquished any reasonable expectation of privacy in the backpack. On that basis, the Motion to Suppress (Dkt. 21) is **DENIED**.

## II. Inevitable Discovery

Even if Mr. Starr had not abandoned the backpack, the Court finds that its contents would have been inevitably discovered. Mr. Starr does not contest that officers had probable cause to arrest him. Nor does he dispute the contents of the OCPD and Oklahoma County Detention Center intake procedures, which the government attached as an exhibit to its Response (Dkt. 22), and about which Officers Garrison and Gutierrez testified. The officers explained that those standardized procedures, which require opening containers to inventory their contents, were necessary for several reasons. Those reasons include rendering safe any explosive or dangerous devices, preventing any contamination of other stored property or evidence, disposing of perishable food items, and separately tagging and storing cash to ensure it is returned in full to inmates upon release. Mr. Starr does not contest any of this.

---

[25] *Jones*, 707 F.2d at 1172.

What Mr. Starr does contest is the policy implications of the inevitable discovery doctrine. Mr. Starr fears that the Fourth Amendment is a dead letter if police departments can deflect constitutional violations with the shield of sufficiently well-drafted intake procedures. This fear, and this tension, are as old as the doctrine itself.[26] That is why the law imposes standards, to ensure that the inevitable discovery exception does not swallow the rule. Those standards exist not only on the back end, where courts scrutinize inventory search policies to protect against fishing expeditions,[27] but on the front end as well. Law enforcement may not pursue an inventory search at all costs; for example, they cannot overlook an available legal alternative to impounding a backpack.[28]

"The inevitable discovery exception is not a windfall device,"[29] and the standards that define the doctrine ensure that it "involves no speculative elements but focuses on demonstrated historical facts capable of ready verification."[30] Here, those standards are satisfied. At the time of arrest, officers had no available alternatives to impounding the backpack. They could not simply leave it on an unwitting citizen's property, and Mr. Starr did not offer up any nearby friends or relatives who could take custody of the bag while he was detained. Once the backpack was impounded, its contents would have been inventoried, regardless of whether it was treated as evidence of a crime or simply as Mr.

---

[26] *See Nix*, 467 U.S. at 443–48.

[27] *See O'Neil*, 62 F.4th at 1290–93.

[28] *See Braxton*, 61 F.4th at 833–39.

[29] *O'Neil*, 62 F.4th at 1291.

[30] *Nix*, 467 U.S. at 444 n.5.

Starr's property. That inventory search would have been (and was) conducted according to established, standardized procedures.[31] Under those demonstrable facts, the Court finds that the contents of the backpack would have inevitably been discovered in a lawful manner, and therefore that the Motion to Suppress (Dkt. 21) must be **DENIED**.

*Conclusion*

The Court finds that Mr. Starr abandoned the backpack when he left it under the shop table on the side of a stranger's house. In addition, the contents of the backpack would have inevitably been discovered following Mr. Starr's arrest and the consequent inventory search. For either of these independent, alternative reasons, the Motion to Suppress (Dkt. 21) is **DENIED**. This case is **RESET** on the Court's May 2024 Trial Docket.

**IT IS SO ORDERED** this 4th day of April 2024.

PATRICK R. WYRICK
UNITED STATES DISTRICT JUDGE

---

[31] *Cf. O'Neil*, 62 F.4th at 1293.